**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PEDRO GARCIA, ) <br> ) <br> Defendant. ) <br> ) | **CRIMINAL ACTION** <br><br> No. 12-10089-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant Pedro Garcia's motion to suppress. (Doc. 504). The motion has been fully briefed and is ripe for decision. (Docs. 517, 564, 577). The court held a hearing on March 4, 2013. Defendant's motion is denied for the reasons herein.

**I. Facts**

Government authorities searched the home of Garcia's parents on October 19, 2010, pursuant to a search warrant issued by Judge Hampton in Ford County, Kansas. At that time, Garcia was in custody serving a federal sentence which commenced on or about November 8, 2009.[1] The application for the search warrant was submitted by Detective Shane Webb on October 18, 2010. Webb applied for a search warrant for both Garcia's residence and the residence of co-defendant Gonzalo Ramirez.[2]

---

[1] However, there is no dispute that Garcia resided at his parents' home prior to his incarceration.

[2] Ramirez also moved to suppress the evidence seized pursuant to the warrant executed on October 19, 2010. (Doc. 425). The government, however, informed the court that it does not intend to present evidence seized during the search of Ramirez' residence on October 19, 2010. The government also executed a search on August 3,

In his affidavit, Webb discusses both a robbery and a murder which occurred on June 8, 2009. Garcia is currently charged with VICAR counts pertaining to these alleged crimes. Webb details his investigation of both the robbery and the murder. According to Webb, Dodge City police were not aware of Garcia's involvement in the robbery and murder until they interviewed Joe Galindo on June 23, 2010, and October 12, 2010. On October 14, 2010, Anthony Wright was interviewed by Webb and verified Galindo's information.

On June 8, 2009, Garcia and at least three other individuals entered a home wearing red bandannas and committed an armed robbery. After committing the robbery, Garcia and the others left the home and returned to Garcia's residence on foot. At this time, Anthony Wright arrived at Garcia's residence. Webb stated that Wright is a documented Nortenos gang member. Wright observed Garcia and the others pulling off red bandannas and talking about the robbery they just committed. They remained in Garcia's residence for approximately one hour. They divided the money they took from the victims, who were of Guatemalan descent. They left Garcia's residence in Wright's vehicle. Garcia or Gonzalo Ramirez stated that they wanted to go find some "scraps" to hit up. "Scraps" is a derogatory term for the Surenos, a rival gang to the Nortenos.

Wright drove to an area south of town where he had observed some Surenos gang members. They arrived at a trailer park on MacArthor. Near lot 24, they observed four individuals drinking and dressed in blue colors. They assumed that the individuals were associated with

---

2009. The government does seek to introduce this evidence against Ramirez. (Doc. 585).

the Surenos gang. Both Garcia and Ramirez exited the vehicle, pulled red bandannas over their faces and fired approximately 20 rounds. They were also yelling "Norte." Israel Peralta was killed. Wright drove Garcia and Ramirez back to Garcia's residence. Garcia exited the car with his gun.

Webb is a trained detective and has extensive experience with gang activity. Webb stated that he believed that the gang attire and gang bandanas would still be at Garcia's residence. Webb stated that even though Garcia was in custody, he believed that his family members would not have thrown out his clothing but instead placed it in boxes if it was not still in his room. Webb was investigating Garcia and the gang for narcotics, home invasions and homicides. Webb indicated in his affidavit that he was searching for items for the robbery but the investigation of the gang encompasses more crimes.

Judge Hampton signed the warrant and authorized the officers to search for the following:

> Any gang attire including but not limited to red bandannas and items with Norteno gang association, photos, drawings, writings, gang roll calls ect [sec].. Any documents, photographs, mail, bills, or other personal or business items indicating the identity of persons residing at the location.

(Doc. 577, exh. 1).

When authorities executed the search warrant on Garcia's residence, they seized letters written in red ink, St. Ramon candles, posters, gang graffiti, and other items. Garcia moves to suppress the items seized on the basis that probable cause did not exist for the search warrant because it was based on stale information.

-3-

**II.  Analysis**

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In determining the validity of a warrant, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." Harris, 369 F.3d at 1165 (quoting United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1330 (10th Cir. 2003)). The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." United States v. Rowland, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting United States v. Corral-Corral, 899 F.2d 927, 937

(10th Cir. 1990)).

The court finds that the facts set forth in the affidavit establish probable cause to search Garcia's residence. Evidence of Garcia's gang association with documented gang members, the allegations of two individuals that Garcia was involved in the murder and the robbery on June 8 and that he wore a red bandanna on that day, the fact that clothing items and gang items are often kept in the home and Garcia's criminal history, are sufficient to warrant a person of reasonable caution in believing that the items sought would be found in Garcia's home. See United States v. Mathis, 357 F.3d 1200, 1205 (10th Cir. 2004) (noting that an officer's opinion, based on his professional expertise, that evidence of illegal activity will be found in the place to be searched is entitled to consideration in determining whether probable cause existed at the time a warrant is issued).

Regarding staleness, the court also finds that probable cause is supported by timely information. Defendant argues that the affidavit did not provide any basis to believe that the criminal activity of the gang was ongoing and that it would be found at Garcia's residence. "Whether information is stale depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." United States v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005). The Webb affidavit alleges gang association, and targeted crimes against individuals of Guatemalan descent and/or Surenos gang members. The affidavit also states that the investigation is ongoing and relates to all gang members and their criminal activity in the area. While the affidavit is not as detailed

-5-

as the affidavit this court addressed in United States v. Campbell, No. 07-10104, 2007 WL 2155657 (D. Kan. July 25, 2007), aff'd 603 F.3d 1218 (10th Cir. 1010), the search warrant in this case sought, among other things, clothing and gang material that are usually maintained in a residence over a lengthy period. See United States v. Cantu, 405 F.3d 1173, 1178 (10th Cir. 2005) (stating that when "the circumstances suggest ongoing criminal activity, the passage of time recedes in importance"). To his credit, Webb stated that he did not believe any items stolen in the robbery or the guns used in the robbery and murder would be in the residence.

Even assuming the affidavit's information was so stale as to not establish probable cause with regard to Garcia, the court concludes "the affidavit's information nonetheless provided sufficient indicia of probable cause to justify the officers good-faith reliance." Campbell, 603 F.3d at 1233.

## III. Conclusion

Garcia's motion to suppress is denied. (Doc. 504).

IT IS SO ORDERED.

Dated this ___10th___ day of April 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE